UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES ENVIRONMENTAL SERVICES | CIVIL ACTION |
| VERSUS | No. 21-1865 |
| AMERICAN POLLUTION CONTROL CORPORATION, ET AL. | SECTION I |

### ORDER & REASONS

Before the Court is a motion[1] for partial dismissal, filed by defendants, American Pollution Control Corporation ("AMPOL"), Nickey Bailey ("Bailey"), and Roy Bourgeois ("Bourgeois") (collectively, "defendants"). Plaintiff, United States Environmental Services, L.L.C. ("USES"), opposes[2] the motion. For the following reasons, the motion for partial dismissal is denied.

### I.

USES filed a complaint asserting numerous claims against defendants, including misappropriation of trade secrets and unfair trade practices.[3] In general, USES alleges that Bailey and Bourgeois resigned from USES in order to work for its competitor, AMPOL.[4] Bailey and Bourgeois "were high-level managers heading up USES' storm response services in Louisiana where cleanup from natural disasters is

---

[1] R. Doc. No. 50 (motion); R. Doc. No. 60 (reply memorandum).
[2] R. Doc. No. 57.
[3] R. Doc. No. 1, at 17–26.
[4] *Id.* at 1–4. The facts stated in this order are taken solely from USES' complaint, and the Court views these allegations in the light most favorable to USES. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

a major part of USES' business[.]"[5]  Because Bailey and Bourgeois provided services to USES' customer, Entergy, they had access to confidential information pertaining to Entergy, including invoices and contracts.[6]  Bailey and Bourgeois left USES, misappropriating confidential information, in early September 2021 when "USES was providing critical storm response services to its customers" in the wake of Hurricane Ida.[7]  USES alleges that Bourgeois and Bailey "coordinated a mass exodus," and ten other USES employees left to work for AMPOL during the relevant time period.[8]  Bailey and Bourgeois "also sabotaged USES' relationships with key customers in the weeks before their planned resignations," and they "began directing Entergy-related work to AMPOL before they resigned."[9]  USES asserts that, as a result of these and other actions, Bailey and Bourgeois "were ultimately successful in stealing USES' ongoing business with Entergy[.]"[10]

Defendants initially argued that USES did not plead sufficient facts to support a claim of tortious interference with a contract.[11]  USES responded, and it agreed that the complaint did not state a claim for tortious interference with *a contract*.[12]  Instead, USES argued that the complaint sufficiently stated a claim for tortious interference with business relations.[13]  Defendants replied by arguing that USES did

---

[5] R. Doc. No. 1, at 1.
[6] *Id.* at 6, 11.
[7] *Id.* at 2.
[8] *Id.*; *see also id.* at 7.
[9] *Id.* at 3.
[10] *Id.* at 14.
[11] R. Doc. No. 50-1, at 3–4.
[12] R. Doc. No. 57, at 1–2.
[13] *Id.*

not plead sufficient facts to withstand defendants' motion for partial dismissal, even under a theory of tortious interference with business relations.[14]

## II.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, when the plaintiff fails to set forth well-pleaded factual allegations that would entitle him or her to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007).

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Consequently, a plaintiff need not allege detailed factual allegations, but it must raise a right to relief beyond mere speculation. *Id*.

A court reviews the complaint in the light most favorable to the plaintiff. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Furthermore,

---

[14] R. Doc. No. 60, at 2–3.

courts may not look beyond the pleadings to determine whether relief should be granted. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III.

Defendants argue that USES has not sufficiently stated a claim of tortious interference with business relations.[15] Under Louisiana law, this tort is "'based on the principle that the right to influence others not to enter business relationships with others is not absolute.'" *Traffic Jam Events, LLC v. Lilley*, No. 21-122, 2021 WL 1226409, at *5 (E.D. La. Apr. 1, 2021) (Milazzo, J.) (quoting *Bogues v. La. Energy Consultants, Inc.*, 71 So. 3d 1128, 1134 (La. App. 2 Cir. 2011)); *see also D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713, 724–25 (E.D. La. 2020) (Fallon, J.). Louisiana jurisprudence has viewed this cause of action with disfavor, and "there appear to be no reported cases where a party has been held liable for this tort." *Whitney Bank v. SMI Companies Global, Inc.*, 949 F.3d 196, 208 (5th Cir. 2020) (citing *Bogues*, 71 So. 3d at 1135).

To succeed on a claim for tortious interference with business relations, "a plaintiff must prove by a preponderance of the evidence that the defendant: (1) 'acted with actual malice'; (2) 'actually prevented the plaintiff from dealing with a third party'; (3) acted 'improperly,' i.e., not to 'protect legitimate interests'; and (4) caused damage to the plaintiff." *IberiaBank v. Broussard*, 907 F.3d 826, 841 (5th Cir. 2018) (citing *Bogues*, 71 So. 3d at 1134–35); *see also Henderson v. Bailey Bark Materials*,

---

[15] R. Doc. No. 60, at 2–3. Because USES agrees with defendants that the complaint does not allege a claim of tortious interference with a contract, *see* R. Doc. No. 57, at 1–2, the Court does not discuss that theory of recovery.

116 So. 3d 30, 37 (La. App. 2 Cir. 2013). "Significantly, it is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party." *Bogues*, 71 So. 3d at 1135.[16] For tortious interference with business relations, the term "third party" includes a business' customers. *Whitney Bank*, 949 F.3d at 208.[17]

Defendants argue that the complaint does not allege that defendants actually prevented USES from dealing with a third party.[18] Specifically, "there is no allegation [in the paragraphs of the complaint related to tortious interference with business relations] that USES was actually prevented by [d]efendants from working with Entergy or any other third party."[19] Similarly, defendants contend that

---

[16] In their reply memorandum, *see* R. Doc. No. 60, at 2, defendants reference the "actually prevented" language stated in *Bogues*, 71 So. 3d at 1135. Defendants do not further elaborate on this language. The first instance of a court discussing tortious interference with business relations using the "actually prevented" language appears to be *Marshall Inv. Corp. v. R.P. Carbone Co.*, No. 05-6486, 2006 WL 2644959, at *5 (E.D. La. Sept. 13, 2006) (Vance, J.) ("It is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant *actually prevented* the plaintiff from dealing with a third party.") (emphasis added). Ultimately, the *Marshall* court and the *Bogues* court refer to *Ustica Enterprises, Inc. v. Costello*, 434 So. 2d 137, 140 (La. App. 5 Cir. 1983), as authority for the "actually prevented" language. *Marshall*, 2006 WL 2644959, at *5; *Bogues*, 71 So. 3d at 1135. The *Ustica* court noted that "a plaintiff need show that a defendant improperly influenced others not to deal with plaintiff." 434 So. 2d at 140. The Court proceeds with its analysis with these authorities in mind.

[17] Although defendants correctly state the pertinent law for a claim of tortious interference with business relations, *see* R. Doc. No. 60, at 2, defendants only challenge USES' complaint with respect to the requirement that a defendant must actually prevent a plaintiff from dealing with a third party. *Id*. at 2–3. Accordingly, the Court does not discuss the other requirements as defendants do not raise them as grounds for dismissal in their motion.

[18] R. Doc. No. 60, at 2–3.

[19] *Id*. at 3.

"[m]erely stating that a defendant affected plaintiff's busines relationship is not enough to state a claim."[20]

Defendants' argument is unpersuasive. Under the heading "Count 5" in the complaint—labeled "Tortious Interference with Business Relations,"—the first paragraph includes the common provision that USES "repeats and re-alleges all previous allegations as if fully alleged," for this claim.[21] Sections of the preceding seventy-six paragraphs allege numerous facts that, if true, plausibly state that defendants targeted USES' client, Entergy, and that defendants' actions did not merely affect USES' relationship with Entergy, but actually prevented Entergy from doing business with USES.

For example, the complaint states that USES discovered, after Bourgeois and Bailey resigned, that Entergy had "been incorrectly told that USES did not have employees knowledgeable to perform transfer work, when in fact it did," and that "Bourgeois and Bailey started directing Entergy work to AMPOL" while they were still employed at USES.[22] Moreover, following Bailey's resignation, Entergy "reached out to Bailey via his USES email," which USES was apparently monitoring after Bailey left.[23] "When USES asked Entergy what USES could do to help, Entergy indicated that USES should ignore the emails since the work was now going to AMPOL."[24] Further, Bailey accessed "several key Entergy-related documents" before

---

[20] *Id.*
[21] R. Doc. No. 1, at 23.
[22] *Id.* at 14.
[23] *Id.*
[24] *Id.*

6

his resignation, and someone continued to access Bailey's USES computer with his "unique log-in credentials" after his resignation.[25] Similarly, "Bourgeois, on the day of his resignation, deleted hundreds of documents from the USES computer assigned to him, including extensive information about Entergy."[26] Overall, "USES has now lost . . . at least one significant customer, Entergy, who now does busines with AMPOL."[27]

The Court, reading the factual allegations in the light most favorable to USES, concludes that the complaint states a claim to relief that is plausible on its face and raises a right to relief beyond mere speculation. For the foregoing reasons,

**IT IS ORDERED** that defendants' motion for partial dismissal is **DENIED**.

New Orleans, Louisiana, December 28, 2021.

_____
          **LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[25] *Id.* at 3, 13.
[26] *Id.*
[27] *Id.* at 6.